# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

SHERRILL B.[1],

                                  Plaintiff,

        v.                              5:17-CV-754 (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                  Defendant.

HOWARD D. OLINSKY, ESQ., for Plaintiff
SERGEI ADEN, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 6).

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed[2] applications for Disability Insurance Benefits ("DIB")

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only her first name and last initial.

[2] When used in conjunction with an "application" for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. *See* 20 C.F.R. §§ 404.630, 416.340. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a later date.

and Supplemental Security Income ("SSI") on August 28, 2013, alleging disability beginning June 1, 2013.[3] (Administrative Transcript ("T") at 30, 197-205). Her applications were denied initially on December 20, 2013. (T. 90-122). Administrative Law Judge ("ALJ") Barry E. Ryan conducted a hearing on August 25, 2015, at which plaintiff testified. (T. 56-81).

In a decision dated September 4, 2015, the ALJ found that plaintiff was not disabled. (T. 27-44). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on May 8, 2017. (T. 1-7).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be

---

[3] Plaintiff subsequently amended the alleged onset date to August 22, 2013. (T. 276).

hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that her impairment prevents her from performing her past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)). Substantial evidence

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.  FACTS

As of the date of the August 25, 2015 administrative hearing, plaintiff was 43

years old. (T. 60). She was a high school graduate, who had attended regular education classes. (T. 60, 234). She had also obtained certifications for work in hospice care and as a home health aide. (T. 60-61, 234). She resided alone, but frequently received assistance from her adult children. (T. 71-72).

Plaintiff's recent employment history included work for various companies as a home health aide. (T. 62, 252-59). Her responsibilities varied depending on the patient, but generally included housework, taking patients for walks, lifting patients into and out of a wheelchair, and helping patients with personal care and meals. (T. 66). Plaintiff left this position in August 2013 after pain in her hands, arms, and neck prevented her from performing these duties. (T. 61-62).

Plaintiff was diagnosed with degenerative disc disease in August 2013. (T. 286-89). She reported lower back pain that radiated down both her legs, causing her to feel unstable. (T. 362). She also complained of hand and arm pain that increased with movement. (T. 355, 362). Since her diagnosis, plaintiff has been treated with pain medication and physical therapy. (T. 357-58, 519, 556, 603, 607). Her symptoms continued in spite of this treatment, and she was diagnosed with fibromyalgia in October 2014. (T. 371). She also reported increased feeling of anxiety and depression, that were aggravated by her pain and the resulting lack of sleep. (T. 494, 612).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 33-37). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.    THE ALJ'S DECISION

After finding that plaintiff met the insured status requirements through March 31, 2018, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 22, 2013. (T. 32).  Next, the ALJ found that plaintiff had the following severe impairments at step two of the sequential evaluation: degenerative disc disease and status post knee surgery. (T. 32-33).  The ALJ found that plaintiff's other impairments, included fibromyalgia, autoimmune disorder, chest pain, and obesity were non-severe because the record did not show that they caused significant functional limitations. (T. 33).  At the third step, the ALJ determined that plaintiff's impairments or combination thereof did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P. (T. 34-35).

The ALJ found at step four of the analysis that plaintiff could perform less than the full range of medium work. (T. 35-37).  Specifically, he found that plaintiff could lift, carry, push or pull up to fifty pounds on an occasional basis, up to twenty pounds frequently, and up to ten pounds continuously. (T. 35-37).  He found that plaintiff could stand, walk, or sit for up to six hours each during a typical workday, and could continuously reach, handle, finger, feel, operate foot controls, climb, balance, stoop, kneel, crouch, crawl, and operate a car. (T. 35).  Plaintiff could generally tolerate exposure to unprotected heights, humidity, and wetness, and could frequently tolerate exposure to respiratory irritants, extreme temperatures, and vibrations. (*Id*.)  In making this RFC determination, the ALJ stated that he considered all of the plaintiff's

symptoms, and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Rulings ("SSR") 96-4p and 96-7p. (*Id.*)  Finally, the ALJ stated that he considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927 as well as SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (*Id.*)

The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not fully credible in light of the record evidence. (T. 36).  The ALJ next found that plaintiff did not retain the capacity to perform any of her past relevant work. (T. 37-38). However, "considering the [plaintiff']s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 38).  Accordingly, the ALJ determined that plaintiff was not disabled from the alleged onset date of August 22, 2013 through the date of the ALJ's decision. (T. 38-39).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    The ALJ's step two determination was not supported by substantial evidence. (Pl.'s Br. at 13-14) (Dkt. No. 11).

2.    The ALJ's RFC assessment was not supported by substantial evidence due to the ALJ's failure to properly evaluate the medical opinions and other evidence. (Pl.'s Br. at 14-19).

7

3.     The ALJ improperly failed to consult a vocational expert. (Pl.'s Br. at 19-20).

4.     The Commissioner erred by failing to properly consider and discuss the additional medical evidence submitted to the Appeals Council after the ALJ rendered his decision. (Pl.'s Brief at 20-21).

Defendant argues that the Commissioner's determination was supported by substantial evidence and should be affirmed. (Def.'s Br. at 7-20) (Dkt. No. 14). For the following reasons, this court agrees with defendant and will dismiss the complaint.

## DISCUSSION

## VI.    <u>SEVERE IMPAIRMENT</u>

### A.    **Legal Standards**

The claimant bears the burden of presenting evidence establishing severity at step two of the disability analysis. *Briggs v. Astrue*, No. 5:09–CV–1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Rep.-Rec.), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and

remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a condition severe. *Hamilton v. Astrue*, No. 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013) (quoting *McConnell v. Astrue*, No. 6:03-CV-521, 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . . ." SSR 85-28, 1985 WL 56856, at *3. However, a combination of "slight abnormalities," having no more a minimal effect on plaintiff's ability to work will not be considered severe. *Id.* The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id.*

The Second Circuit has held that the step two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). If

the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Id.* at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with the sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

### B.    Application

Plaintiff argues that the ALJ erred in determining that plaintiff's fibromyalgia was not a severe impairment. (Pl.'s Br. at 13-14). The ALJ did not question the diagnosis of fibromyalgia, but concluded that plaintiff had not demonstrated that it caused significant functional limitations. (T. 33, 371, 567, 617). This court finds that the ALJ's determination was supported by substantial evidence.

To refute the ALJ's step two determination, plaintiff relies upon the June 2, 2014 opinion of her primary care physician, Dr. Kristen Graves. Dr. Graves opined that plaintiff's pain would require her to take frequent unscheduled breaks and force her off-task during the workday. (T. 640-41). However, Dr. Graves never attributed such limitations to fibromyalgia, as opposed to her original diagnosis of degenerative disc

disease. (*Id.*)  Indeed, Dr. Graves' opinion preceded plaintiff's fibromyalgia diagnosis by several months.  (T. 563, 640-41).  Moreover, the ALJ assigned this opinion little weight, due to the lack of objective evidence to support it. (T. 34, 37).  Accordingly, there is no indication in the record that plaintiff's fibromyalgia affected her ability to perform basic work activities, and the ALJ's determination that plaintiff's fibromyalgia was not a severe impairment was supported by substantial evidence.

Plaintiff further contends that the failure to consider plaintiff's fibromyalgia a severe impairment tainted the RFC analysis. (Pl.'s Br. at 13-14).  However, even though the ALJ found that plaintiff's fibromyalgia was not severe, he still analyzed the limiting effects of the primary symptom of fibromyalgia, pain, as part of the RFC analysis.[4]  (T. 35-37).  Therefore, even if the ALJ erred at step two, such error would be harmless.

## VII.   RFC EVALUATION/TREATING PHYSICIAN

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d

---

[4] The ALJ's decision, like plaintiff's treatment records, does not attempt to distinguish between the pain attributable to degenerative disc disease and that attributable to fibromyalgia.

Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y. 1987)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The ALJ must properly analyze the

12

reasons that a report of a treating physician is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

## B. Application

It is the province of the ALJ to resolve genuine conflicts in the record. *Veino*, 312 F.3d at 588. However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)). Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those opinions that he deemed most consistent with plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole). In light of the ALJ's analysis of plaintiff's medical history, the relevant medical opinions, and plaintiff's activities of daily living, this court concludes that his RFC determination was supported by substantial evidence, as summarized below.

### 1. Physical Limitations

As noted above, the ALJ found that plaintiff could perform less than the full range of medium work. (T. 35). Plaintiff argues that the ALJ did not properly weigh

the medical evidence regarding plaintiff's physical impairments, particularly the evidence from her treating physician regarding plaintiff's degenerative disc disease. (Pl.'s Br. at 18). This court disagrees, and concludes that the ALJ's RFC assessment of plaintiff's physical impairments was supported by substantial evidence.

In reaching the physical RFC determination, the ALJ gave "greatest weight" to the opinion of Dr. Eric Schmitter, a non-examining consultant who reviewed plaintiff's then-current medical records and responded to the ALJ's interrogatory in April 2015. (T. 36, 448-57). Dr. Schmitter opined that plaintiff's medical records established "mild degenerative cervical disc disease, without neurological deficit," and lower back pain. (T. 448). Based on the available objective medical evidence, Dr. Schmitter opined that plaintiff could occasionally lift or carry up to fifty pounds, frequently lift or carry up to twenty pounds, and "continuously" (over two-thirds of the workday) lift or carry up to ten pounds. (T. 452). He further opined that plaintiff could sit, stand, or walk up to six hours each over the course of an eight hour work day. and could sit, stand or walk up to four hours at one time without needing to change positions. (T. 453). He found no limitations with plaintiff's left hand functioning with regard to reaching, handling, fingering, feeling, or pushing and pulling, but did not offer an opinion as to her right hand functioning due to the lack of medical evidence. (T. 454). He also found that plaintiff had no limitations with regard to climbing, balancing, stooping, kneeling, crouching, and crawling. (T. 455).

Plaintiff contends that the ALJ assigned excessive weight to Dr. Schmitter's opinion, even though Dr. Schmitter did not examine plaintiff and did not have the

benefit of the full medical record.[5]  However, Dr. Schmitter reviewed all available records prior to offering his opinion, and the ALJ is entitled to rely on his opinion if it is consistent with the record evidence.  *See Christy v. Comm'r of Soc. Sec.*, No. 5:13-CV-1552 (GTS/WBC), 2015 WL 6160165, at *10 (N.D.N.Y. Oct. 20, 2015) ("[A]n ALJ may rely on the opinions of non-examining medical experts."); see also  *Lugo v. Comm'r of Soc. Sec.*, No. 3:16-CV-746 (GTS), 2017 WL 4005621, at *9 (N.D.N.Y. Sept. 11, 2017) (collecting cases).

The ALJ noted that Dr. Schmitter specialized in orthopedic surgery, and that his opinion was "consistent with [plaintiff's] medical imaging, presentation during most exams, and reported activities of daily living." (T. 36).  For example, during a March 4, 2015 consultative examination performed by Dr. Elke Lorensen, plaintiff showed a normal gait and station, both with and without her cane; full grip strength in both hands; and intact dexterity in her left hand. (T. 373).  Plaintiff had reduced range of motion in her cervical and lumbar spine, and six trigger points for pain along her spine. (T. 374).  She showed full range of motion in her elbows, forearms, wrists, fingers and ankles bilaterally. (T. 373-74).  She showed no joint effusion, inflammation, or instability in her upper or lower extremities.[6] (T. 374).

---

[5] Plaintiff correctly notes that Dr. Schmitter did not have the benefit of Dr. Graves' treatment notes when he issued his opinion. However, plaintiff does not identify any objective evidence in those notes that would contradict Dr. Schmitter's opinion. *See Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (consulting physician's opinion was not rendered "stale" where the additional evidence was consistent with material already in the record).

[6] The ALJ assigned Dr. Lorensen's ultimate opinion "little weight," because of numerous internal inconsistencies.  For example, Dr. Lorensen opined in her narrative report that plaintiff had no gross limitations with regard to sitting, standing, walking, or handling small objects with her left hand, and "moderate" restrictions with regard to turning her head, bending, lifting, and

15

The ALJ also noted that Dr. Schmitter's opinion was consistent with a subsequent consultative examination and opinion by Dr. Kalyani Ganesh, completed on July 1, 2015. (T. 37, 617-620). During that examination, plaintiff again appeared to be in no acute distress, with a normal gait, and her cane did "not appear to be absolutely necessary." (T. 618). Plaintiff again showed limited range of motion in her cervical and lumbar spine, but showed full range of motion in her shoulders, elbows, forearms, wrists, knees, and ankles bilaterally. (T. 619). Her hand and finger dexterity were intact, and she showed full grip strength. (*Id*.) Similar to Dr. Schmitter, Dr. Ganesh opined that plaintiff had no gross limitations with regard to sitting, standing, or walking. (T. 620). He also opined that plaintiff had "mild" limitations with regard to lifting, carrying, pushing, and pulling.[7] (*Id*.)

Plaintiff contends that the ALJ erred by failing to give controlling weight to the treating physician opinions from Dr. Graves. (Pl.'s Br. at 17). The ALJ assigned "little weight" to Dr. Graves' March 20, 2014 opinion, which described plaintiff as "very limited" in all areas of physical functioning, including walking, standing, sitting, lifting, seeing, hearing, and speaking. (T. 37, 370). The ALJ assigned "no weight" to subsequent opinions, issued in May and June 2014, in which Dr. Graves described even more restrictive physical functional limitations, and opined that plaintiff's pain would

---

reaching. (T. 374). In an accompanying medical source statement ("MSS"), Dr. Lorensen opined that plaintiff could only occasionally lift or carry up to ten pounds, and could stand or walk for a total of two hours each workday. (T. 377). The consultative examiner did not provide an explanation for the discrepancy between the report and the MSS.

[7] The ALJ assigned "some weight" to Dr. Ganesh's opinion, but discounted it because it did not specify how much weight plaintiff could actually lift, carry, push, or pull. (T. 37).

require her to take frequent unscheduled breaks during the workday. (T. 636-42).

The ALJ noted that plaintiff had only been treating with Dr. Graves for two months at the time that she issued the March 2014 opinion, for a total of two visits. (T. 37, 369). The ALJ found no support in plaintiff's medical records, including Dr. Graves' treatment notes, for the significant physical and mental functional limitations set forth in the three opinions. (T. 37). For example, Dr. Graves opined that plaintiff was in constant pain, and unable to sit for long periods of time. (T. 37, 370). However, although Dr. Graves' treatment notes include plaintiff's description of her back and arm pain, they do not reference the extreme functional limitations set out in his opinion. (T. 490, 494). Indeed, Dr. Graves noted in her June 2014 opinion that she was 'unable to quantify" plaintiff's ability to sit, stand, walk, or reach based upon her office examinations, and recommended a "formal functional capacity assessment." (T. 640). The ALJ also found no support in plaintiff's treatment history for Dr. Graves' opinion that plaintiff's pain would frequently force her off-task. (T. 87, 640).

Although an examining source, such as Dr. Graves, is generally afforded more weight, an ALJ is allowed to afford more weight to a non-examining source, such as Dr. Schmitter, when the determination is supported by the record. *See Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995) (noting that the applicable regulations "permit the opinions of non-examining sources to override treating sources' opinions provided they are supported by evidence in the record"); *Florez v. Apfel*, No. CV-97-3052, 1998 WL 760334, at *6-7 (E.D.N.Y. Aug. 31, 1998) ("Given the [medical expert's] opinions are supported by the record, and the [treating physician's] opinion that the claimant was

disabled is not, the ALJ was free to find the non-examining expert's testimony persuasive."). The ALJ's recitation of the medical evidence demonstrates the reasons for his assignment of greater weight to Dr. Schmitter's opinion. (T. 423-25). By explaining his conclusion regarding plaintiff's physical capabilities, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding that was consistent with the overall record. *See Matta*, 508 F. App'x. at 56. Accordingly, the ALJ's physical RFC determination was supported by substantial evidence.

## 2. Mental Limitations

Plaintiff also contends that the ALJ erred by failing to include any mental limitations in his RFC determination. (Pl.'s Br. at 14-17). This court finds that the ALJ's consideration of the impact of plaintiff's anxiety and depression on her RFC was supported by substantial evidence.[8]

In determining plaintiff's mental RFC, the ALJ noted that Dr. Graves, who specialized in internal medicine, issued the only medical opinions addressing plaintiff's mental impairments. (T. 37-38). In March 2014, Dr. Graves opined that plaintiff's attention and concentration were negatively affected by her mood, and that plaintiff had moderate limitations with regard to all areas of mental functioning, including making simple decisions, interacting appropriately with others, and maintaining basic standards of personal hygiene and grooming. (T. 370). In a May 2014 mental health evaluation,

---

[8] At step two, the ALJ reviewed the special technique and considered plaintiff's limitations in the four broad functional areas known as the 'paragraph B criteria." (T. 33). He found that plaintiff had mild limitations with regard to activities of daily living and social functioning, and concluded that her anxiety and depression were non-severe. (T. 32-33). Plaintiff has not challenged the ALJ's step two determination.

Dr. Graves opined that plaintiff had moderate limitations with regard to maintaining attention and concentration for extended periods, maintaining regular attendance, and sustaining an ordinary routine without special supervision. (T. 636). She also opined that plaintiff would have marked limitations in completing a normal workday and workweek, and would likely be absent for four or more days in an average month. (T. 637). Dr. Graves also noted that plaintiff showed some improvement with medication, and had behaved appropriately during her medical appointments. (T. 636-37).

The ALJ reviewed plaintiff's limited psychiatric treatment history and found no examination data that supported Dr. Graves' opinion. (T. 37, 75-76, 611-616). Although Dr. Graves had opined that plaintiff would have difficulty maintaining a regular work schedule, the ALJ noted that plaintiff had not demonstrated any difficulties in making her scheduled medical appointments. (T. 37, 637). The ALJ also considered plaintiff's general independence with her activities of daily living, including cooking, using public transportation, attending church, and performing some household chores. (T. 33-34). The ALJ also cited plaintiff's testimony that her prescribed medication helped with her mood and allowed her to better listen and interact with others. (T. 75-77). Because the ALJ considered the objective medical evidence, plaintiff's daily activities and the hearing testimony in determining that plaintiff's diagnosed depression and anxiety did not impose any limitations on her RFC, the ALJ's determination was supported by substantial evidence.

## VIII. **STEP FIVE**

### A.    **Legal Standards**

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate

that there is other work in the national economy that plaintiff can perform.  *Poupore v.*

*Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  "Work which exists in the national

economy" means work existing in significant numbers "either in the region where the

individuals live or in several regions of the country." *McCusker v. Comm'r of Soc. Sec.*,

No. 1:13-CV-1074, 2014 WL 6610025, at *3 (N.D.N.Y. Nov. 20, 2014) (quoting SSR

82-53, 1982 WL 3134, at *3 (1982) (internal quotation marks removed).

In the ordinary case, the ALJ carries out this fifth step of the sequential disability

analysis by applying the applicable Medical-Vocational Guidelines ("the Grids").  *Id.*

The Grids divide work into sedentary, light, medium, heavy, and very heavy categories,

based on the extent of a claimant's ability to sit, stand, walk, lift, carry, push, and pull.

20 C.F.R. Pt. 404, Subpt. P, App. 2; *Zorilla v. Chater*, 915 F. Supp. 662, 667 n.2

(S.D.N.Y. 1996).  *See also* 20 C.F.R. §§ 404.1567 & 416.967.  Each exertional category

of work has its own Grid, which then takes into account the plaintiff's age, education,

and previous work experience.  *Id.*  Based on these factors, the Grids help the ALJ

determine whether plaintiff can engage in any other substantial work that exists in the

national economy.  *Id.*

"Although the grids are 'generally dispositive, exclusive reliance on [them] is

inappropriate' when they do not fully account for the claimant's limitations." *Martin v.*

*Astrue*, 337 F. App'x 87, 90 (2d Cir. 2009) (citation omitted).  When significant

nonexertional impairments[9] are present or when exertional impairments do not fit squarely within Grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity. *McConnell v. Astrue*, 6:03-CV-0521 (TJM), 2008 WL 833968, at *21 (N.D.N.Y. Mar. 27, 2008) (citing, *inter alia*, *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

## B.    Application

In this case, the ALJ used the Grids to determine that plaintiff could perform work in the national economy because he found that plaintiff's non-exertional impairments, namely the limitation to "frequent" exposure to extreme temperatures, vibrations, and respiratory irritants such as dust and odors had "little or no effect" on the occupational base. (T. 38).  Plaintiff contends that the ALJ erred by failing to obtain VE testimony to properly evaluate how these nonexertional impairments would impact the number of jobs available in the national economy. (Pl.'s Br. at 19-20).  This court disagrees.

Most job environments do not require work in environments with extreme cold, heat, vibration, or respiratory irritants.  *See Searles v.Comm'r of Soc. Sec.*, No. 1:14-CV-1124 (TJM/TWD), 2015 WL 9582726, at *13 (N.D.N.Y. Nov. 30, 2015) (citing SSR 96–9p, 1996 WL 374185, *9 (July 2, 1996)).  Even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base.  *Id*.  In this case, the ALJ found that plaintiff could still work in positions that

---

[9] A "nonexertional" limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only the claimant's ability to meet the demands of jobs other than the strength demands.  20 C.F.R. §§ 404.1569a(c), 416.969a(c).

required "frequent" exposure to environmental irritants, and then made an explicit

finding that these limitations would have "little or no effect" on the occupational base.

Because the ALJ analyzed whether plaintiff's nonexertional impairments "significantly

eroded" her occupational base, he did not commit legal error by relying on the Grids to

make his step five determination. *See Hurd v. Astrue,* No. 10-CV-1116 (DNH), 2013

WL 140389, at *4 (N.D.N.Y. Jan. 11, 2013) (finding no error in ALJ's reliance on Grids

where claimant retained RFC for light work with limitations including occasional

interaction with co-workers, little to no contact with the general public, and avoidance

of concentrated exposure to respiratory irritants); *see also Bistoff v. Colvin*, No. 1:14-

CV-984 (MAT), 2017 WL 2772282, at *6 (W.D.N.Y. June 27, 2017) (collecting cases).

## IX.  <u>NEW EVIDENCE SUBMITTED TO APPEALS COUNCIL</u>

### A.  **Legal Standard**

The regulations provide that the Appeals Council considers new and material

evidence if it relates to the period on or before the date of the ALJ's decision. 20 C.F.R.

§ 404.976(b)(1). *See Jenkins v. Colvin*, No. 1:13-CV-1035 (GLS), 2015 WL 729691, at

*5 (N.D.N.Y. Feb. 19, 2015) (citation omitted). If the Appeals Council finds that the

evidence is new and material, it will review the case if it finds that the ALJ's decision is

contrary to the weight of the current record evidence. *Id.* (citing 20 C.F.R. § 404.970

(b). Even if the Appeals Council finds that the evidence is not new and material and

declines to review the ALJ's decision, the evidence in question becomes part of the

record for review by the court. *Id.* (citing *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir.

1996). If the Appeals Council denies review after reviewing the new evidence, the

Commissioner's decision includes the Appeals Council's conclusion that the ALJ's findings remain correct despite the new evidence. *Id.*

## B. Application

Plaintiff requested Appeals Council review of the ALJ's decision. (T. 8-10). While this request was pending, plaintiff submitted additional evidence, including a "Fibromyalgia Questionnaire" completed by Dr. Linda Warnowicz on March 4, 2016. (T. 22-26). On May 8, 2017, the Appeals Council denied plaintiff's request for review, and found that the new evidence did not impact the ALJ's determination of disability dated October 17, 2014. (T. 2). In reaching this conclusion, the Appeals Council stated that Dr. Warnowicz's opinion post-dated the ALJ's September 4, 2015 decision, and was not relevant to the period reviewed by the ALJ. (*Id.*)

Plaintiff contends that the Appeals Council erred in finding that the opinion did not address the relevant time period, because Dr. Warnowicz first treated plaintiff on October 31, 2014. (T. 22, 371). Plaintiff further contends that the opinion is relevant to plaintiff's fibromyalgia and the resulting physical limitations. (Pl.'s Br. at 20-21). This court agrees with plaintiff that the Appeals Council erred in finding that Dr. Warnowicz's opinion did not address the relevant time period. However, this court also finds that such error was harmless, because Dr. Warnowicz's opinion was not material to the determination of disability.

New evidence is material if it is (1) relevant to the claimant's condition during the time period for which benefits were denied, and (2) shows a reasonable possibility that the new evidence would have influenced the Commissioner to decide claimant's

application differently. *Id.* In *Pollard*, the Second Circuit concluded that the Appeals Council had erred in rejecting new evidence that "strongly suggests that, during the relevant time period, [claimant's] condition was far more serious than previously thought and that additional impairments existed when [claimant] was younger."[10] *Id.*

Plaintiff has not identified any portion of Dr. Warnowicz's opinion that was reasonably likely to alter the ALJ's determination. Although labeled a "fibromyalgia questionnaire," Dr. Warnowicz did not opine on any functional limitations resulting from plaintiff's fibromyalgia. (T. 22-25). For example, she did not complete the sections regarding plaintiff's ability to sit, stand, or walk during an eight hour workday, and only recommended that "functional capacity evaluations be completed by a physiologist or a qualified physical therapist." (T. 25). In addition, the ALJ already had Dr. Warnowicz's treatment notes, including her diagnosis of fibromyalgia, and made general reference to them in his RFC analysis. (T. 33, 36). Dr. Warnowicz's opinion includes a summary of plaintiff's subjective complaints of pain, but the ALJ considered similar evidence at length in his decision. (T. 36). Accordingly, this court cannot conclude that the new opinion evidence was reasonably likely to have altered the ALJ's decision. Therefore, remand is unnecessary.

**WHEREFORE**, based on the findings above, it is

---

[10] In *Pollard*, the ALJ cited a lack of other evidence as reason not to credit the claimant's mother's testimony that the child was very hard to manage, got into fights with teachers and other students, and started fires. *Pollard*, 377 F.3d 183, 185 (2d Cir. 2004). The Second Circuit concluded that the new evidence, which included the child's subsequent hospitalization in a psychiatric ward after threatening to kill his teacher, created a reasonable possibility that the ALJ may have reached a different conclusion if the evidence had been available. *Id.*

**ORDERED**, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

**ORDERED**, that judgment be entered for the **DEFENDANT.**

Dated:     August 30, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge